UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JOHN KLEIN,** | : | Case No. 1:17-cv-219 |
| c/o Gerhardstein & Branch Co. LPA | : | |
| 441 Vine Street, Suite 3400 | : | Judge |
| Cincinnati, OH 45202 | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | **CIVIL COMPLAINT AND JURY** |
| **HAMILTON COUNTY, OHIO** | : | **DEMAND** |
| 138 E. Court Street | : | |
| Cincinnati, OH 45202, | : | |
| | : | |
| and | : | |
| | : | |
| **NAPHCARE, INC.** | : | |
| c/o National Services Information, Inc. | : | |
| 145 Baker Street | : | |
| Marion, OH 43302 | : | |
| | : | |
| and | : | |
| | : | |
| **SHERIFF JIM NEIL** | : | |
| **Hamilton County Sheriff's Office** | : | |
| 1000 Sycamore St, | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| *Individually and in his official capacity* | : | |
| *as Sheriff of Hamilton County*, | : | |
| | : | |
| and | : | |
| | : | |
| **CURTIS EVERSON, M.D.** | : | |
| **c/o Hamilton County Justice Center** | : | |
| 1000 Sycamore Street | : | |
| Cincinnati, OH 45202, | : | |
| | : | |
| *Individually and in his official capacity* | : | |
| *as the Medical Director at the Hamilton* | : | |
| *County Justice Center*, | : | |
| | : | |
| and | : | |
| | : | |

1

```
```

**JOHN/JANE DOE 1** :
**Hamilton County Sheriff's Office** :
**1000 Sycamore St.** :
**Cincinnati, OH 45202** :
:
*Individually and in his/her official* :
*capacity as an employee of Hamilton* :
*County*, :
:
**and** :
:
**JOHN/JANE DOE 2** :
**Hamilton County Sheriff's Office** :
**1000 Sycamore St.** :
**Cincinnati, OH 45202** :
:
*Individually and in his/her official* :
*capacity as an employee of Hamilton* :
*County*, :
:
**and** :
:
**JOHN/JANE DOES 3-12** :
**Hamilton County Sheriff's Office** :
**1000 Sycamore St.** :
**Cincinnati, OH 45202** :
:
*Individually and in their official* :
*capacity as employees of Hamilton* :
*County or as persons providing medical* :
*services at the Hamilton County Justice* :
*Center*, :
:
**and** :
:
**JOHN/JANE DOES, 13- 22** :
**Hamilton County Sheriff's Office** :
**1000 Sycamore St.** :
**Cincinnati, OH 45202** :
:
*Individually and in their official* :
*capacity as Corrections Officers* :
*employees of Hamilton County* :
:
:
                  **Defendants.** :

## I. PRELIMINARY STATEMENT

1.      This civil rights case challenges the extreme denial of medical care to kidney transplant recipient, John Klein, while he was in custody at the Hamilton County Justice Center ("HCJC"). The Defendants' failure to timely provide medical care and anti-rejection medications to Mr. Klein while he was in their custody, resulted in the near rejection of his kidney and months of needless pain and suffering. Mr. Klein's serious medical need and his need for timely treatment was obvious. Defendants knew that Mr. Klein had a transplanted kidney and had to regularly take immunosuppressive medication to keep his body from rejecting his kidney. Mr. Klein made continuous complaints about his kidney problems and the pain that he was having since the moment he was booked into the HCJC. Despite their knowledge of his serious medical condition, from April 1, 2015 until April 8, 2015, Defendants did not provide Mr. Klein his medically necessary antirejection medications, did not evaluate him, and did not treat him. The Defendants did not act in a timely fashion and ignored Mr. Klein's serious medical needs the first week he was in jail. During the second week, they failed to adequately treat him, which caused him to develop a life-threatening infection. Mr. Klein brings this civil rights action to secure fair compensation and to encourage these and similar Defendants to provide adequate and timely medical treatment to pretrial detainees in the future.

## II. JURISDICTION

2.      Jurisdiction over claims arising from Defendants' violation of the Civil Rights Act is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4).

3.      Jurisdiction over the state law claim is conferred upon this Court by 28 U.S.C. § 1367.

4.      Venue is proper in this Division.

## III. PARTIES

5. Plaintiff, John Klein, was at all times relevant to this action a resident of Hamilton County, Ohio.

6. Defendant Hamilton County is a unit of local government organized under the laws of the State of Ohio. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

7. Defendant NaphCare, Inc. is a corporation and was at all times relevant to this action the medical provider under contract with Hamilton County, providing medical services at the Hamilton County Justice Center. NaphCare, Inc. is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

8. Defendant Sheriff Jim Neil was at all times relevant to this action the Sheriff of Hamilton County, Ohio. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in both his individual and official capacities.

9. Defendant Curtis Everson was at all times relevant to this action an agent of NaphCare serving as the Medical Director at the Hamilton County Justice Center. Defendant Everson is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in both his individual and official capacities.

10. Defendant John/Jane Doe 1 was at all times relevant to this action the booking officer at the Hamilton County Justice Center and an employee of Hamilton County, Ohio. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He or she is sued in both his or her individual and official capacities.

11. Defendant John/Jane Doe 2 was at all times relevant to this action the health screening officer at the Hamilton County Justice Center and an employee of Hamilton County, Ohio.

Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He or she is sued in both his or her individual and official capacities.

12. Defendant John/Jane Does 3 through 12 were at all times relevant to this action nurses or other medical professionals responsible for providing medical care at the Hamilton County Justice Center and the employees of Hamilton County, Ohio or its medical provider subcontractor, NaphCare. Defendants Does 3-12 are each a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. Each of them is sued both in his or her individual and official capacity.

13. Defendants John/Jane Does 13 through 22 were at all times relevant to this action corrections officers employed at Hamilton County, Ohio. Defendants are each a "person" under 42 U.S.C. § 1983 and at all times relevant to this case each of them acted under color of law. Each of them is sued both in his or her individual and official capacity.

## IV. FACTS

**A. Background**

14. John Klein is a young, 31-year-old male who has been suffering from kidney problems for most of his life.

15. At a very young age, Mr. Klein only had use of one kidney. He was required to be on dialysis, but eventually he needed a kidney transplant.

16. Mr. Klein's medical condition requires constant medical care.

17. In 1999, John Klein had a kidney transplant, but his body rejected the transplanted kidney in 2005. For the next three years, he was on dialysis.

18. In 2008, Mr. Klein had a second kidney transplant which required immunosuppressive therapy to keep his body from rejecting the kidney for the second time.

19. Mr. Klein's must take immunosuppressive or antirejection medications which include, Prednisone, Prograf, and Myfortic. Daily dosages of each and every one of those medications are required to avoid kidney failure and kidney rejection.

20. Prior to his incarceration at the HCJC, from February 24, 2015 until February 26, 2015, Mr. Klein was treated at Atrium Medical Center for acute renal failure, acute urinary tract infection, and severe hydronephrosis, or swelling, of his transplanted kidney.

21. Mr. Klein continued to regularly take his proscribed immunosuppressive medication until he was booked at the HCJC on April 1, 2015.

22. On April 1, 2015, Mr. Klein was arrested for driving under an OVI suspension.

23. At about 10:09 p.m., on April 1, 2015, Mr. Klein was booked at the HCJC.

**B. At Booking, Klein Informs Defendants of His Kidney Problem and Need for Medication**

24. At booking, the booking officer, John/Jane Doe 1, and the screening officer, John/Jane Doe 2, interviewed and screened Mr. Klein for current health conditions. They both learned he had a serious medical need.

25. During his booking process, Mr. Klein informed Defendants, Doe 1 and Doe 2, that he had a left kidney transplant and had to take his antirejection medication 3 times daily.

26. Doe 2 took Mr. Klein's vitals and noted the names of Mr. Klein's physicians and prescriptions.

27. HCJC's medical records confirm that Mr. Klein's kidney disease was identified during booking on April 1, 2015.

28. Defendants took no action to provide Mr. Klein his medications.

29.     At all times during booking, Defendants Doe 1 and Doe 2 were aware that prompt treatment was necessary in order to save Mr. Klein's transplanted kidney and that delays would foreseeably cause damage and rejection of his transplanted kidney.

### C. Klein Continues to Ask for His Antirejection Medication Every Shift for the Next Eight Days

30.     Starting on the morning of April 2, 2015, Mr. Klein informed Defendant officers, John/Jane Doe 13-22, each shift for eight days, that he had a kidney transplant and had to take his antirejection medication 3 times daily.  Mr. Klein repeatedly told the Defendants corrections officers, John/Jane Doe 13-22, that he needed his immunosuppressive medication because without them, his body would reject his transplanted kidney.  Several corrections officers, Doe 13-22, responded by stating they would see to his getting his medication, leaving Mr. Klein to believe they would provide his medication, but none ever did.  At least one corrections officer, Doe 13 - 22, refused, telling Mr. Klein he was "faking."

31.     During each daily pill call, from April 1st through April 8th, Mr. Klein asked each Defendant medical provider, John/Jane Doe 3-12, if they had his medication.  Each time he was told no. Mr. Klein informed each provider that he needed his antirejection medication for his transplanted kidney and that without it, his body would reject his kidney.  John/Jane Does 3-12 repeatedly agreed that they would look into getting him his medication, but none ever did.

32.     In addition to repeatedly informing the Defendants Doe 3 through 22 that he needed his medication, Mr. Klein wrote at least three sick call request forms seeking ant-rejection medication and treatment for his failing kidney.

33.     The April 7, 2015, sick call request form complained of left plank pain and stated, "still no medication since I have been here."  He repeated that he had chronic kidney failure.

### D. Defendants Delay Medical Treatments for Klein' Serious Medical Needs

7

34.     Despite their knowledge that Mr. Klein had a transplanted kidney and was on immunosuppressive therapy, Defendants did not give Mr. Klein his antirejection medication on April 1, 2, or 3, 2015.

35.     When Mr. Klein appeared in court on April 3rd, he complained to the Judge that he needed his anti-rejection medication and the jail was not providing it.  Hamilton County Municipal Court Judge William Mallory ordered that someone obtain Mr. Klein's medications from his car and "deliver them to the jail."

36.     Despite the Judge's order, no Defendant took action to obtain Mr. Klein's antirejection medications or prescribe the necessary medication.

37.     On April 5, 2015, Defendants made calls to Kroger Pharmacy to get medication verification, but they took no further efforts were made to provide Mr. Klein's medication or even evaluate him.

38.     Despite Mr. Klein's repeated requests, he did not receive his medication on April 6th, 7th or 8th.

39.     At no time between April 1st and April 8th, did any of the medical providers, Doe 3-12, Dr. Everson, or any corrections officer Doe 13-22 make any efforts to provide Mr. Klein's antirejection medication or assess or treat his declining kidney function.

40.     Mr. Klein went to court on April 9, 2015, and again complained he had not received his anti-rejection medication or treatment for his chronic kidney failure.  This time Judge Mallory ordered HCJC to hold Mr. Klein in a medical unit.

41.     As a result of the Judge's order, Defendants finally gave Mr. Klein his antirejection medication on April 9th, 8 days after he was booked into the HCJC.

8

42. Even though the Defendants began to give Mr. Klein the medical care that he needed, they only gave him 2 out of the 3 medications he was required to take; they gave him Prednisone and Prograf, but not Myfortic.

43. Because his transplanted kidney was failing, Mr. Klein needed to cathaterize himself several times a day. The HCJC would not provide him clean catheters so he was forced to repeatedly use dirty catheters. As a result, he developed a Urinary Tract Infection ("UTI") and a severe intestinal infection called, Clostridium difficile (often called C. diff) which can be life-threatening.

44. On April 15, 2015, Mr. Klein was vomiting, was experiencing diarrhea, was sweating, and was showing symptoms of kidney failure.

45. He was then transferred to UC Hospital to treat the hydronephrosis and the UTI he had developed at the HCJC.

46. From April 2, 2015 through April 15, 2015, Mr. Klein experienced pain with urination, progressing to left plank pain, and diminished urine output. Medical Defendants Doe 2 and Doe 3 through 12 knew these are serious signs of kidney failure and rejection of his transplanted kidney. Yet, from April 1, 2015 until April 15, 2015, Defendant Dr. Everson did not evaluate or treat Mr. Klein.

47. From April 1, 2015 through April 8, 2015, Defendants Dr. Everson, NaphCare and the medical Defendants made no attempts to timely retrieve Mr. Klein's immunosuppressive medication.

48. Defendants Dr. Everson, NaphCare, and the medical Defendants Doe 2, and Doe 3 through 12, knew of the risks associated with the absence of antirejection medication in the process of immunosuppressive therapy and the diminishing effects that could have on a

9

transplanted kidney. Defendants Dr. Everson, NaphCare, and the medical Defendants Doe 2, and Doe 3 through 12, purposeful, reckless, and deliberate delay in treating Mr. Klein's caused him unnecessary significant pain and suffering.

**E. Policies, Practices and Culpable Conduct**

49. On April 1, 2015, the Defendants knew that Mr. Klein's transplanted kidney was a serious medical condition needing prompt medical treatment.

50. From April 1, 2015 when he began his incarceration at the HCJC, Mr. Klein told Defendants, booking officer, health screening officer, pill call providers each shift, and the corrections officers each shift, that he had a kidney transplant and had to regularly take his immunosuppressive medication or he would suffer kidney failure and possible kidney rejection.

51. Despite their knowledge of Mr. Klein's serious medical needs, Defendants delayed his medical treatment by refusing and ignoring his requests for proscribed medication.

52. It was foreseeable that by not giving Mr. Klein his medication and by delaying treatment, Defendants were increasing Mr. Klein's chances of losing his second transplanted kidney and decreasing his chances for recovery in the long term.

53. Defendants' refusal to provide basic medical care in response to an obviously serious medical risk was unreasonable, reckless, and deliberate indifferent to Mr. Klein's serious medical needs.

54. Defendants knew of a serious risk of harm to Mr. Klein and knowingly disregarded that risk.

55. Defendants acted intentionally, knowingly, unreasonably, negligently, recklessly, and with deliberate indifference to the rights and safety of Mr. Klein when they utterly failed to provide any kind of medical care.

56. The actions of the Defendants reflect an arbitrary abuse of government power, which shocks the conscience.

57. Defendants Hamilton County, Sheriff Neil, Dr. Everson, and NaphCare, established policies, practices and customs of unnecessarily delaying adequate medical health services to inmates, including Mr. Klein, with serious medical needs and failing to secure appropriate, timely treatment by appropriate medical providers for inmates including Mr. Klein.

58. The policies, customs, patterns, and practices of Hamilton County were the moving force behind the constitutional deprivations suffered by Mr. Klein at the HCJC. The deprivations included the denial of adequate treatment, care, and observation starting on April 1, 2015. The extreme delay in securing adequate medical treatment caused Mr. Klein unnecessary pain and harm, risked the rejected of his transplanted kidney, and extended his time of recovery.

59. At all times relevant to this action, Defendants Hamilton County, NaphCare, Sheriff Neil, and Dr. Everson failed to train and supervise the Jail staff, including Does 1 through 22, in properly caring for and treating inmates with serious medical needs. The Defendants simply ignored the obvious risks of harm to Mr. Klein and the simple means of timely treating and managing Mr. Klein's medical condition.

60. Mr. Klein's harm was preventable with adequate medical care and medical treatment, which was not provided by Defendants.

**F. Harm to Mr. Klein**

61. As a direct and proximate result of Defendants' actions, Mr. Klein endured extreme physical pain and suffering, emotional distress, anguish, and humiliation.

62. Due to Defendants' delay in treatment, Mr. Klein suffered serious long-term effects including increase in his risk of experiencing kidney failure, continued pain, infection, and hydronephrosis.

63. As a further direct and proximate result of Defendant's actions, Mr. Klein incurred additional medical bills and treatment after his release from the HCJC.

64. Mr. Klein's recovery continued for approximately 2 years after his incarceration at the HCJC due to the damages caused by Defendants' unnecessary and unlawful delay in treating Mr. Klein.

## V. CAUSE OF ACTION – 42 U.S.C. § 1983

65. Plaintiff incorporates paragraphs 1 through 64 as if fully written herein.

66. Defendants have, under color of law, deprived the Plaintiff of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendment of the United States Constitution including but not limited to the right to adequate medical care when incarcerated as a pretrial detainee.

67. Defendants Hamilton County, Sheriff Neil, NaphCare, and Dr. Everson failed to adequately train and supervise the corrections officers and the staff in the assessment and monitoring of inmates in serious medical need.

68. The rules, regulations, customs, policies and procedures of the Defendants Hamilton County, Sheriff Neil, NaphCare, and Dr. Everson regarding the treatment and management of persons requiring specialty medical care were inadequate, unreasonable, and deliberately indifferent and were the moving force behind the constitutional deprivations suffered by Mr. Klein.

## VI. JURY DEMAND

69. Plaintiff requests a jury trial on all claims triable to a jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A. Award Plaintiff compensatory damages in an amount to be shown at trial;

B. Award punitive damages against the individual Defendants (not Hamilton County) in an amount to be shown at trial;

C. Award Plaintiff reasonable attorney's fees, costs and disbursements under 42 U.S.C. § 1988;

D. Award Plaintiff prejudgment interest;

E. Grant to the Plaintiff such additional relief as the Court deems just and proper.

Respectfully submitted,

s/ Jennifer L. Branch
Jennifer L. Branch (0038893)
Trial Attorney for Plaintiff
Alphonse A. Gerhardstein (0032053)
Attorney for Plaintiff
Gerhardstein & Branch, Co LPA
441 Vine Street, Suite 3400
Cincinnati, Ohio 45202
(513) 621-9100
Fax (513) 345-5543
jbranch@gbfirm.com
agerhardstein@gbfirm.com